JOHN L. KRIEGER
Nevada Bar No. 6023
DANIEL P. KIEFER
Nevada Bar No. 12419
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109
(702) 949-8200
(702) 949-8398 (fax)

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NEUMONT UNIVERSITY, LLC, a Delaware limited liability corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LITTLE BIZZY, LLC, a Nevada limited liability company; JESSE NICKLES, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |

Plaintiff Neumont University, LLC ("Neumont" or "University") alleges as follows:

## NATURE OF THE ACTION

This is an action by Neumont against Defendants Little Bizzy, LLC ("Little Bizzy") and Jesse Nickles ("Nickles") for business disparagement, intentional interference with contractual relations, and intentional interference with prospective economic advantage. Plaintiff seeks damages, attorneys' fees, costs, and preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Neumont and Defendants, and the amount in

controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00).

2. This Court has personal jurisdiction over Defendant Little Bizzy because it is a limited liability company formed under the laws of the State of Nevada and operates within the State of Nevada.

3. This Court has personal jurisdiction over Defendant Nickles because he either resides in the State of Nevada and/or engaged in tortious conduct in this district.

4. Venue is proper in this district under 28 U.S.C. § 1391(a)(1), (a)(2) and (c). Here, venue is proper under 28 U.S.C. § 1391(a)(1) and (c) because this is a judicial district were Defendant Little Bizzy resides and, on information and belief, all Defendants reside within the State of Nevada. Furthermore, venue is also proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims outlined below occurred within this judicial district.

## PARTIES

5. Plaintiff Neumont is a Delaware limited liability company and maintains its principal place of business in South Jordan, Utah.

6. Upon information and belief, Defendant Little Bizzy is a Nevada limited liability company with its principle place of business in Las Vegas, Nevada.

7. Upon information and belief, Defendant Nickles is an individual who conducts business in the State of Nevada and resides in either the State of Nevada or the State of California. Defendant Nickles is an officer or director of Defendant Little Bizzy and personally directed, controlled, ratified, participated in, and/or authorized the tortious activities described herein.

8. Upon information and belief, Defendants Little Bizzy and Nickles are each the alter ego of the other, and are each the officer, agent, servant, representative, and/or employee of the other, acting in participation with the other, having authority or apparent authority to bind the other.

/ / /

/ / /

9. Upon information and belief, Defendants Little Bizzy and Nickles are each connected and/or affiliated with each other and are acting in concert with each other, having authority or apparent authority to bind the other.

## GENERAL ALLEGATIONS

### Neumont's Background

10. Neumont is a private university located in South Jordan, Utah that specializes in technology-oriented curriculums. Neumont was established in 2003 with the mission of providing a professional education that is rich in ideas, current in industry practices, and deep in technological insight from the input of industry-leading partners.

11. Neumont is an accredited member of the Accrediting Counsel for Independent Colleges and Schools ("ACICS"). ACICS is the largest national accrediting organization of degree-granting institutions.

12. Neumont offers its students the opportunity to earn a Bachelor of Science degree in one of four programs: (1) Computer Science, (2) Software & Game Development, (3) Web Design and Development, and (4) Business Technology Operations. Neumont also provides the opportunity for students to receive a Master of Science degree in Computer Science.

13. All Neumont programs focus on an innovative method of teaching that allows students to work on advanced projects in collaborative teams. Additionally, unlike many other universities, Neumont centers its curriculum on the practical aspects of software development and IT management. This applied learning philosophy provides students with the opportunity to become innovators, a significant advantage in the job market.

14. Presently, over ninety-five (95%) percent of Neumont graduates are employed in their field of study within six (6) months after graduation. The average starting salary for a Neumont graduate is in excess of $60,000 annually.

### Nickles, Little Bizzy & www.Collegetimes.us

15. Defendants claim to specialize in website hosting, online "visibility boosting," online marketing, and custom design services. A true and accurate copy of Little Bizzy's website homepage located at <littlebizzy.com> is attached hereto as Exhibit 1.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

3

16. Upon information and belief, Defendants own and operate the website located at <collegetimes.us> ("Collegetimes"). A true and accurate copy of the homepage of Collegtimes' website is attached hereto as Exhibit 2.

17. In addition to attempting to maximize revenue through a barrage of online advertisement links, Collegetimes purports to provide a "RateMyCollege" forum for students to comment on their experiences at various colleges and universities around the world. Defendants represent that their RateMyCollege pages host "raw, unedited" reviews from people who have actually attended the institution and can "Warn Students Around the World!" about the school. A true and accurate copy of "RateMyCollege" page within the Collegetimes website is attached hereto as Exhibit 3.

18. Upon information and belief, Defendants created a page within the Collegetimes website whereupon content regarding Neumont could be posted. Defendants assure visitors to the page that they can "trust that the comments are honest, authentic experiences shared by fellow students," and that only "false positives" associated with SPAM are removed. A true and accurate copy of the Neumont page within the Collegetimes website is attached hereto as Exhibit 4.

**Defendants' Concerted Effort to Cause Harm to Neumont**

19. In or around April 2009, upon information and belief, an allegedly disgruntled parent of a dismissed student posted negative content on Collegetimes containing false and inaccurate statements about Neumont.

20. After becoming aware of the content, Neumont posted an official response to the Collegetimes' Neumont page clearly identifying that it was a response from the University's Administration, not a false "positive" student.

21. Upon information and belief, Defendants subsequently deleted Neumont's posting and added a warning on the "Utah" page underneath Neumont's name and the link to its page: "Warning: We recommend that you avoid this college." The word "Warning" was, and still is, listed in bolded red letters. A true and accurate copy of a current incarnation of the "Utah" page in question is attached hereto as Exhibit 5.

///

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

22. Upon learning of the deleted comment and the posted "Warning," Neumont attempted to contact Defendants in attempt to resolve the matter and achieve a balanced open forum regarding the University, but Defendants did not respond to Neumont's inquires.

23. Instead, Defendants responded by adding a "[?]" link to the end of the "warning," which links to an internal page explaining the "Warning."

24. Defendants assert that the "Warning" means:

[Collegetimes] has taken the liberty of <u>warning our visitors to avoid certain colleges and universities</u>. We issue this warning solely as an editorial opinion, based not on specific claims/accusations on our part but rather on the general reputation an institution seems to maintain.

Below are some of the reasons we may issue such a warning to visitors:

- We suspect the institution's marketing staff to have posted false "positive" student reviews
- We suspect the institution of coercing students to deny/retract their previously negative reviews
- The institution <u>regularly harasses us</u> via email or sends us legal threats via their attorneys
- The institution <u>regularly accuses</u> our guests of libel/defamation without providing evidence
- The institution seems to <u>encourage a cult-like atmosphere in order to deal with criticism</u>
- <u>The institution seems to hire an overwhelming amount of incompetent faculty members</u>
- The institution is <u>known to be nearing bankruptcy, financial collapse, or legal shutdown</u>
- The institution is nationally accredited, but not regionally accredited [?]

When you notice such a warning on certain college profiles at RateMyCollege, **we strongly urge you to stay away from the related college or university** (or career institute, technical institute, vocational school, etc). Many of these types of institutions put more money into advertising, internet marketing, and lawsuits then they do into their academic programs. <u>NEVER provide your phone number or credit card information to these types of institutions, as they are likely to harass you and/or find legal loopholes so that they can charge you hefty amounts of money for classes you may or may not have completed.</u>

**YOU HAVE BEEN WARNED**

A true and accurate copy of the "Warning" label explanation page located at <reviews.collegetimes.us/warning> is attached hereto as Exhibit 6 (emphasis added).

/ / /

/ / /

25. Though couched as a pseudo-public-service announcement to "help" students, Defendants' "Warning" conflates what may be nothing more than a simple inquiry from an educational institution with more nefarious behavior that borders on possible criminal activity.

26. The predicate acts listed in the "Warning" did not occur. Yet, Defendants "strongly urge" and "warn" visitors to stay away from Neumont for all of the aforementioned reasons.

27. Taken together, it appears that Defendants designed the Collegetimes website in such a manner as to lure students, potential students and their parents into believing that the edited content within the RateMyCollege pages is trustworthy and that the website is designed to protect them from "bad" institutions.

28. Neumont students and alumni became aware of the Collegetimes website and began posting their own experiences and positive content on Neumont's RateMyCollege page therein. Some of this "positive" content stayed on the Neumont page for a while.

29. However, upon information and belief, some time after August 2010, Defendants removed all positive content from the Neumont RateMyCollege page, leaving only negative content, much of which contained false, inaccurate, defamatory and disparaging comments about the University and its services, and left the "Warning" label and explanation page in tact.

30. Upon information and belief, some of the edited negative content on the Collegetimes' Neumont page contains references that do not appear to belong to real and identifiable people.

31. Upon information and belief, Defendants shortly thereafter exercised further control over the forum and deactivated any ability of anyone to post new content on Neumont's RateMyCollege page and blocked all Neumont-related IP addresses from accessing the Collegetimes website.

32. On information and belief, approximately twenty (20) Neumont students attempted to post their own positive and/or responsive content on Collegetimes regarding their experiences at Neumont, but have been deliberately blocked from doing so by Defendants.

///

33. The manner in which Defendants have constructed the Collegetimes website and the RateMyCollege Neumont page therein conveys the message that the only reviews to have ever been posted about Neumont on Collegetimes are negative, that Neumont has a bad reputation, and that the University is a place that should be avoided at all cost, all of which is simply untrue.

34. On or around July 10, 2012, Neumont made a final attempt reach out to Defendants to address the issue of unfair control over the forum and the damage that was being caused to Neumont by Defendants' defamatory content. However, in response, Defendants merely provided Neumont with a list of similar "web properties" that had recently been acquired and the purchase price at which they had been acquired.

35. On information and belief, Defendants are purposely boosting Collegetimes visibility vis-à-vis Neumont in order to increase traffic to Defendants' Neumont page and cause significant harm to Neumont so as to further pressure it into purchasing the website. For example, a Google search for the phrase "neumont university review" returns search results wherein a link to Collegetimes' Neumont RateMyCollege page is the second listing. A true and accurate copy of the Google search described above is attached hereto as Exhibit 7.

36. Upon information and belief, Defendants are engaged in a course of action to pressure any university that happens to respond to the Collegetimes website by increasing negative attacks on the university, prohibiting positive content and/or responses to the negative attacks, and essentially holding the forum for ransom until payment is received.

37. Defendants actually appear to taunt and invite such scrutiny. Under the Privacy Policy-Terms of Service-Copyright & DMCA-Contact Us section on the "About Us" page of Collegetimes is the following statement:

> In addition, don't bother to send us threatening emails if your university or institution is getting it's reputation beat out of it over at our college reviews section. You know, and we know, that you don't have the balls to actually file suit, as you **a)** don't have evidence of purposeful libel/slander and **b)** you don't want to risk the negative attention such a suit would bring in the media. Instead, please shut up, stop wasting your time and our time, and consider shutting down your scammy school instead of trying to bully bloggers on the internet.

A true and accurate copy of the "About Us" page located at <collegetimes.us/about> is attached hereto as Exhibit 8.

38. Neumont's reputation and its educational services reputation have been harmed as a result of Defendants' actions.

39. Numerous students have withdrawn from Neumont's program as result of Defendants' actions.

40. Upon information and belief, this harm is further compounded by the fact that a large quantity of Internet traffic is being funneled to Collegetimes whenever a search is performed relating to Neumont.

41. Upon information and belief, countless other potential students have read and continue to read the Collegetimes RateMyCollege page on Neumont and decide not to enter its program.

## COUNT I
### (Business Disparagement)

42. Neumont incorporates each of the allegations in the foregoing paragraphs as though fully set forth herein.

43. Through the intentional and deliberate actions of Defendants, Collegetimes structured at RateMyCollege page that contains only negative, false, inaccurate, disparaging and defamatory statements about Neumont and the educational services provided by it.

44. The false and inaccurate messages on the site are unprivileged because Defendants have become the content provider, including, but not limited to, Defendants' intentional efforts to commandeer the forum of speech by deleting all positive content and restricting further posting to the site, leading consumers to believe that students who attend Neumont only have negative experiences at the University, interjecting and developing a "Warning" label, and passing the forum off as a trustworthy source of information to consumers, when it is not.

45. Defendants knew that the content they had created with the RateMyCollege page devoted to Neumont contained false and/or inaccurate information, but published the it with the intent to cause harm to Neumonts's pecuniary interests, or published it knowing its falsity or with reckless disregard for its truth.

///

46. On information and belief, Neumont has lost revenue and income from student withdrawals and lower enrollment rates caused by Defendants' deliberate acts.

47. Defendants' acts have directly and proximately caused special damages to the Neumont in an amount to be proven at trial, but which Neumont is informed and believes, and on that basis alleges, exceeds $75,000, exclusive of costs and interest.

48. Neumont is further entitled to a preliminary and permanent injunction restraining, enjoining, and otherwise preventing Defendants, their agents, servants, employees, licensees, sponsors, associates, and affiliates, and all persons acting by, through, or in active concert with any of them, from continuing to publish the false and derogatory content contained on Collegetimes.

49. Neumont is informed and believes and thereupon alleges that Defendants' conduct was and is oppressive, malicious, and fraudulent and was carried out in bad faith and with conscious disregard for the rights and well being of Neumont, thereby warranting the assessment of exemplary and punitive damages against these Defendants.

50. Neumont also has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorney's fees and costs incurred in the prosecution of this action.

## COUNT II
(Intentional Interference with Contractual Relationships)

51. Neumont incorporates each of the allegations in the foregoing paragraphs as though fully set forth herein.

52. The relationships Neumont has with its students is vital to its continued livelihood and success, which relationship is evident from the contracts that form the basis for admission to, acceptance to, and attendance at the University.

53. Defendants are aware that of these University contracts with its students.

54. Defendants committed intentional acts intended or designed to disrupt the contractual relationships between Neumont and its students.

///

55. Defendants actually disrupted and interfered with numerous contracts between Neumont and its students.

56. As a direct and proximate result of Defendants' intentional interference with Neumont's contractual relations, Neumont has suffered losses in an amount to be proven at trial.

57. Neumont is further entitled to a preliminary and permanent injunction restraining, enjoining, and otherwise preventing Defendants, their agents, servants, employees, licensees, sponsors, associates, and affiliates, and all persons acting by, through, or in active concert with any of them, from further interference with Neumont's contractual relationships with its students.

58. Neumont is informed and believes and thereupon alleges that Defendants' conduct was and is oppressive, malicious, and fraudulent and was carried out in bad faith and with conscious disregard for the rights and well being of Neumont, thereby warranting the assessment of exemplary and punitive damages against these Defendants

59. Neumont also has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorney's fees and costs incurred in the prosecution of this action.

## COUNT III
(Intentional Interference with Prospective Economic Advantage)

60. Neumont incorporates each of the allegations in the foregoing paragraphs as though fully set forth herein.

61. A prospective contractual relationship existed, and exists between Neumont potential students who are interested in attending the University and students who have accepted offers to enroll in one of Neumont's programs.

62. Defendants are aware of these relationships.

63. Defendants committed intentional acts intended or designed to disrupt and/or prevent the relationships between Neumont and its students.

64. Defendants have no privilege or justification for interfering with these relationships.

///

65. As a direct and proximate result of Defendants' intentional interference with these relationships, Neumont has suffered losses in an amount to be proven at trial.

66. Neumont is further entitled to a preliminary and permanent injunction restraining, enjoining, and otherwise preventing Defendants, their agents, servants, employees, licensees, sponsors, associates, affiliates and attorneys, and all persons acting by, through, or in active concert with any of them, from continuing to interfere with these relationships.

67. Neumont is informed and believes, and thereupon alleges, that Defendants' conduct was and is oppressive, malicious, and fraudulent and was carried out in bad faith and with conscious disregard for the rights and well being of Neumont, thereby warranting the assessment of exemplary and punitive damages against these defendants

68. Neumont also has been required to retain the services of an attorney to pursue its claims against Defendants and is entitled to reasonable attorney's fees and costs incurred in the prosecution of this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Neumont respectfully requests that the Court grant the following relief:

A. An award of compensatory and special damages in excess of $75,000.00, in an amount to be proven at trial;

B. A temporary restraining order, preliminary and permanent injunction prohibiting Defendants and their agents, servants, employees, licensees, sponsors, associates, and affiliates, and each of them, from continuing to publish or disseminate false, defamatory and/or derogatory content aimed at harming Neumont and/or its educational services, faculty, administration, students, or staff by way of the Collegetimes website or any other publication;

C. Punitive damages against Defendants;

D. An award of interest, costs and attorneys' fees incurred by Neumont in prosecuting this action; and

///

///

///

E. Any other relief that the Court deems just and proper.

Dated this 7th day of August, 2012.

LEWIS AND ROCA LLP

By: _____
JOHN L. KRIEGER
Nevada Bar No. 6023
DANIEL P. KIEFER
Nevada Bar No. 12419
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV  89169

*Attorneys for Plaintiff*