UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Neumont University, LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>Jesse Nickles,<br><br>     Defendant. | Case No.: 2:12-cv-1395-JAD-PAL<br><br>**Order re: Service on Jesse Nickles**<br>**[Doc. 66]** |

Plaintiff Neumont University sued Jesse Nickles and his company Little Bizzy for a series of allegedly defamatory statements. Doc. 1. After determining that Nickles was never properly served, I set aside the clerk's default previously entered against him and ordered Neumont to properly serve Nickles within 60 days or show good cause why service could not be made. Doc. 62. Still unable to serve Nickles by traditional means, Neumont requests that I deem its email service sufficient or, in the alternative, permit them to serve Nickles by publication. Doc. 66. I find that Neumont has made a good-faith effort to serve Nickles and that Nickles's continued averments that he is located in a foreign country have confounded the orderly prosecution of this lawsuit. Accordingly, I grant Neumont's motion in part: Neumont has 10 days to serve Nickles via email with a copy of the summons and complaint.

**Background**

Before this case was assigned to me, a clerk's default was entered against Nickles. Doc. 44. After reviewing Neumont's service attempts in connection with its motion for a default judgment against Nickles and Little Bizzy, Doc. 45, I determined that service had not been properly effectuated upon Nickles personally, and I set the default aside.[1] Doc. 62. I then gave Neumont 60 days to serve Nickles or show good cause why service upon him could not be made. *Id.* at 19.

---

[1] Neumont makes much of the court's prior history in handling this case. I note that all of Neumont's citations, including the default entered against Nickles, predated assignment of the case to me.

1

Neumont timely brought this motion within the 60-day service-or-good-cause period and requests that I: (1) find Nickles has already appeared in the case, (2) deem prior email service appropriate and retroactive, or (3) permit Neumont leave to serve Nickles by publication. Doc. 66. Nickels opposed the motion in a pro se capacity, and he explains that he lives outside the country in a location he does not disclose. Doc. 68. Neumont offers no reply.

**Discussion**

**A.    Neumont has shown good cause why it has failed to serve Nickles.**

Neumont argues that, throughout the course of this litigation, Nickles has played "fast and loose with this Court and the justice system" by, *inter alia*, refusing to communicate with counsel by any means other than email. Doc. 66 at 2, 8-9. Neumont argues that Nickles cannot be found in the State of Nevada, efforts to ascertain his whereabouts through his family members have been unsuccessful, and Nickles has admitted that he lives in an undisclosed foreign location. *See id.* at 12. Neumont also contends that the delay in this case has resulted in irreparable harm to it, as during the pendency of this case Nickles has "continue[d] unabated in his cowardly and spurious activities from the anonymous world of the internet." Doc. 66 at 2. In response, Nickles argues that he is "neither obligated nor inclined" to provide information regarding his whereabouts, re-affirms that he lives outside the United States and this has always been the case, and contends that he has not appeared in his individual capacity. Doc. 68 at 2.[2]

Given the protracted nature of this litigation, Neumont's repeated attempts to serve Nickles prior to my setting aside the default, and Nickles's absence from the country, I conclude that Neumont has shown good cause why it has not yet served Nickles.

**B.    Nickles did not consent to personal jurisdiction by "appearing" in the case.**

Neumont argues that Nickles is already properly before the court because he was provided with a copy of the summons and complaint on August 16, 2012, and then made a series of "voluntary" appearances in his individual capacity at, *inter alia*, "discovery conferences, motion

---

[2] Nickles also contends that Neumont was previously ordered to serve him by July 20, 2014. *Id.* at 3-4. Nickles misreads my order, which gave Neumont 60 days to either serve Nickles or show good cause why service could not be made. Doc. 62 at 19. Neumont timely chose the latter course.

practice, and even settlement discussions." Doc. 66 at 8.  In response, Nickles contends that, while he did "appear" previously as Little Bizzy's representative, he was doing so as his company's representative and "removed [himself] from the case as soon as this court ordered . . . Little Bizzy LLC to retain corporate counsel." Doc. 68 at 2.

Due process requires that a defendant be given notice reasonably calculated under the totality of the circumstances to apprise him of the pendency of an action and afford the defendant an opportunity to respond and present objections.[3]  "Service of process is the means by which a court asserts jurisdiction over the person,"[4] and where personal service is required, failure to perfect it is fatal to a lawsuit.[5]  However, a defendant may waive his objection to jurisdiction by appearing and not asserting insufficient service of process as an affirmative defense in a responsive pleading or dispositive motion.[6]  Such defenses may also be waived when a defendant "engage[s] in . . . deliberate, strategic behavior" in defending against the lawsuit.[7]

To date, Nickles has not answered or filed a motion to dismiss, and his company Little Bizzy has had a default judgment entered against it.  Doc. 62.  Neumont points to Nickles's activity in the case as evidence he has effectively appeared and deliberately waived his objections to service of process.  Doc. 66 at 8 (citing Docs. 27, 30, 35, 36, and 40, as well as Nickles's other conduct in the litigation).  But Neumont's chosen record citations do not demonstrate that Nickles was acting on his own behalf such that his behavior was "deliberate" or "strategic."

For example, Doc. 27, a motion Nickles filed to stay discovery pending resolution of a dispositive motion, refers to "Defendant" and "Little Bizzy" as the subjects of the motion; there is no indication that Nickles intended to file this document on his own behalf.  *See* Doc. 27.  Although

---

[3] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

[4] *Securities and Exchange Commission v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation omitted).

[5] *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987).

[6] Fed. R. Civ. Proc. 12(b)(4)-(5); 12(h).

[7] *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998).

Doc. 30 is brought by "Defendants Little Bizzy LLC and Jesse Nickles," the response pertains to Little Bizzy's motion to dismiss, as well as Magistrate Judge Leen's order that Little Bizzy retain counsel by a date certain. *See id.* Nickles, as sole managing member of Little Bizzy, would obviously be obliged to file any response to Judge Leen's show-cause order prior to retaining counsel, and thus Doc. 30 cannot reasonably reflect an appearance by Nickles individually. Similarly, Doc. 35, a *de facto* motion for reconsideration of Judge Leen's denial of a motion to stay and an order to show case, is brought by "Defendants Little Bizzy LLC and Jesse Nickles," defines the two defendants as a singular "defendant" and then refers almost exclusively to "defendant" throughout the remainder of the filing. Doc. 35. Document 36, a "letter" to the court regarding the steps Little Bizzy took to retain corporate counsel, also begins with the opaque joint definition of "defendant," yet concludes by stating that "to avoid the appearance of 'alter ego' actions in this complaint, managing member Jesse Nickles is now removing himself from further dealings with the Plaintiff's counsel and this Court, before the Court-ordered deadline of January 28, 2013." Doc. 36 at 4. Nickles and Little Bizzy then filed an "update" on February 25, 2013, "with further evidence regarding the Plaintiff's ongoing slander and libel against Defendant." Doc. 40.

Neumont also refers to Nickles's litigation conduct, arguing that "Nickles participated in the parties' Rule 26 conference on behalf of himself and his company, and even engaged Neumont in settlement discussions using his personal email . . . as opposed to Little Bizzy's email." Doc. 66 at 9 (citing Doc. 67 at ¶¶ 7, 10). These assertions, supported by their attorney John Kreiger's declaration, do not resolve the ambiguity surrounding Nickles's appearance. Paragraph 7 of Kreiger's declaration indicates that Nickles's "personal" email is jesse@littlebizzy.com, whereas Little Bizzy's email is info@littlebizzy.com. Given that both email addresses are from "littlebizzy.com" and Nickles is Little Bizzy's managing member, it is not entirely clear to me that jesse@littlebizzy.com is Nickles's "personal" email.

On the whole, I do not find that Nickles's use of his personal email to conduct settlement discussions or discovery conferences demonstrates that his behavior was either "deliberate" or "strategic." Although Nickels may have technically "appeared" on several occasions and chose to use one email address over another, it remains unclear whether he was acting on his own behalf or

4

was simply confused about the proper boundaries between defense of the corporate entity (which he could not provide) and his individual defense. I do not find that Nickles has waived any service-of-process objection through his court filings to date. However, I caution Nickles that, because a default judgment has been entered against Little Bizzy and it is no longer an active party in this case, there should be no more confusion regarding whom Nickles represents in this matter: any future filing by Nickles on active issues in this case will be deemed a filing in his individual and personal capacity.

**C.    Neumont cannot use Nickles's affiliation with Little Bizzy to deem prior service effective because Nickles first admitted Little Bizzy was his alter ego after he was previously "served."**

Neumont also argues that I should impute service on Nickles based on the fact service was effectuated on Little Bizzy because default judgment has been entered against Little Bizzy. Doc. 66 at 7. The allegations in the complaint, now accepted as true against Little Bizzy, are that "Defendants Little Bizzy and Nickles are each the alter ego of the other, and are each the officer, agent." Doc. 1 at 2. Additionally, Neumont claims that Nickles has admitted in his discovery responses that he commingled funds, undercapitalized Little Bizzy, failed to observe corporate formalities, made unauthorized diversions of funds, and treated the corporate assets of Little Bizzy as his own." Doc. 45-10 at RFA 133-37.[8]

To support the proposition that service on the corporation constitutes service on an individual who is the company's alter ego, Neumont cites *Certified Building Products, Inc. v. N.L.R.B.*,[9] a one-page, 38-year-old Ninth Circuit opinion that considered service of process in a labor matter. I find *Certified Building Products* distinguishable. As Neumont acknowledges, the *Certified Building Products* opinion was careful to limit its holding to the particular labor relations matter before it: "in a board proceeding of this kind, service upon the corporation is the equivalent of service upon the individual."[10] And while the Ninth Circuit has gone on to note that "the

---

[8] Because I do not conclude that Nickles has yet been brought into this case, Nickles's failure to respond to these requests has no binding effect.

[9] 528 F.2d 968 (9th Cir. 1976).

[10] *Id.* at 969.

5

corporate form *may* be ignored in cases in which the corporation is the agent or alter ego of the individual defendant,"[11] it has not mandated this practice. Other trial courts have concluded that "as-of-yet-unproven" claims of alter-ego liability against a corporate officer "fail[] to satisfy the due process component related to service of process."[12] No default judgment has been entered against Nickles personally, and I decline to impute service on Little Bizzy to him personally under an alter ego theory.

**D.    Prior service attempts by email are not sufficient because Neumont has never obtained leave of court to serve Nickles in this manner.**

Neumont next requests that, if I do not find Nickles has already appeared in the case, I deem an August 16, 2012, email transmission of the summons and complaint to Nickles and Little Bizzy as effective service on Nickles such that his response answer deadline has run. Doc. 66 at 9-11. Under Federal Rule of Civil Procedure 4(f), "Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States: . . . (3) by other means not prohibited by international agreement, as the court orders."[13] Although the Ninth Circuit has condoned service by email when it was "the method of service most likely to reach" the defendant,[14] Neumont missed a critical step that prevents me from validating this 2012 substituted service: it never obtained a court order authorizing service via email before it sent the August 16, 2012, transmission.[15] As the Ninth Circuit explained in *Brockmeyer v. May*, plaintiffs "must obtain

---

[11] *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) (emphasis added). *See also Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 818 (9th Cir. 2011); *Hoag v. Sweetwater Intern.*, 857 F. Supp. 1420, 1426 (D. Nev. 1994) (finding that "the corporate form may be ignored, and jurisdiction over the individual officer allowed, in cases in which the corporate is the agent or alter ego of the defendant."); *j2 Global, Inc. v. Fax87.Com*, 2014 WL 462832, at *3 (C.D. Cal. Feb. 5, 2014) (same).

[12] *Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 2014 WL 3670856, at *3 (D. Or. July 23, 2014).

[13] Fed. R. Civ. Proc. 4(f)(3).

[14] *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002).

[15] *See Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004); *Kowalski v. Anova Food, LLC*, 2012 WL 3308886, at *2 (D. Haw. Aug. 10, 2012). Even if Neumont had obtained such an order, the August 16, 2012, email it references does not technically establish that the summons and complaint were ever provided to Nickles via email. In its current motion, Neumont claims that on

6

prior court approval for the alternative method of serving process," and failure obtain that prior approval is fatal to the success of substituted service.[16] Therefore, I deny Neumont's request to deem the August 16, 2012, email transmission to be effective—and ignored—service.

**E.     Neumont shall have 10 days to serve Nickles by email.**

Finally, Neumont requests permission to serve Nickles by substituted service, in this case, by publication. Doc. 66 at 11-12.[17] "[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant."[18] Thus, a litigant need not have exhausted every feasible service option before petitioning the court for service by "other means."[19] Substitute service must "comport with constitutional notions of due process," which are met when service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[20]

Neumont has not demonstrated that service by publication would comport with due process in this case. Neumont has not even suggested a publication that would be reasonably calculated to reach Nickles. I do find, however, that permitting substituted service by email under FRCP 4(f)(3)

---

August 16, 2012, it "sent notice of this action, along with a litigation hold letter, the summonses, the complaint, the motions with exhibits . . . to both Nickles and Little Bizzy via e-mail addressed to jesse@littlebizzy.com and info@littlebizzy.com," and refers back to a declaration from its attorney, John Kreiger. Docs. 66 at 4; 19-1. Kreiger, declared that "On August 16, 2012, I sent notice of this action via email, along with a litigation hold letter, the summonses for Jesse Nickles . . . and Little Bizzy . . . to both Nickles (jesse@littlebizzy.com) and Little Bizzy (info@littlebizzy.com.). A true and accurate copy of the legal notice is attached hereto as Exhibit F. A true and accurate copy of the litigation hold letter is attached hereto as Exhibit G." Doc. 19-1 at 2. But the exhibits attached to Kreiger's Declaration at Doc. 19-1 begin at letter "H" and do not contain either "F" or "G." If the evidence of these documents exists elsewhere in the record, Neumont has not specified their location. With this jumbled state of the evidence, I cannot conclude that the email service was complete or effective.

[16] *Brockmeyer*, 383 F.3d at 806.

[17] Neumont references Nev. R. Civ. Proc. 4(e), which is triggered when service is attempted "within a judicial district of the United States." Fed. R. Civ. Proc. 4(e)(1). Since it is undisputed that Nickles is not within a judicial district of the United States, this provision is inapplicable.

[18] *Rio Properties*, 284 F.3d at 1015.

[19] *Id.* at 1016.

[20] *Id.* at 1016-17 (quoting *Mullane*, 339 U.S. at 314.

7

comports with due process and is reasonably calculated, under the circumstances of this case, to apprise Nickles of the pendency of the action and afford him an opportunity to present his objections.

Service by email has been approved as substituted service under Rule 4(f)(3) when it is "the method of service most likely to reach" the defendant.[21] As long ago as 2002, the Ninth Circuit acknowledged in *Rio Properties, Inc. v. Rio Int'l Interlink*, that trial courts were authorizing email as a form of substituted service under the rule.[22] And it approved email as a "constitutionally acceptable" substituted method of service upon an "elusive international defendant, striving to evade service of process" that helps "ensure the smooth functioning of our courts of law."[23]

Neumont has demonstrated that the facts and circumstances of this case necessitate that this court craft a substitute method of service of process on Nickles, and service by email is just that method. Nickles's on-line activities are the factual heart of this lawsuit, which involves Nickles's/Little Bizzy's website, www.collegetimes.us. *See* Doc. 1. Although Nickles purports to act on behalf of his Nevada company, Little Bizzy, Neumont has been unable to locate him inside Nevada, and Nickles—through his many filings—has represented that he lives and is "permanently domiciled" "outside the United States."[24]

Neumont need not attempt every permissible means of service of process before petitioning for substitute service,[25] and I find that Neumont has done enough to warrant it here. Neumont attempted to serve Nickles at his parents' house on August 15 and 17, 2012, but was told by Nickles's mother and sister that his whereabouts were unknown. *Id.* at 2. There is also no question that Nickles is receiving filings in this lawsuit at his email address jesse@littlebizzy.com, as he has responded to communications from this address since almost the beginning of the litigation, and he

---

[21] *Id.* at 1017.

[22] *Id.* at 1016.

[23] *Id.*

[24] Doc. 68 at 3. Nickles explains in his most recent filing that his presence in Nevada consists of a mailbox "about the size of a large grapefruit." *Id.* at 1.

[25] *Rio Properties*, 284 F.3d at 1016.

now lists this email address as his contact information on his opposition to Neumont's current motion.[26] The history of Nickles's communications in this case suggests that email is the method of communication Nickles "utilizes and prefers," and thus, it is the method of service most reasonably calculated to reach him.

Finally, since Nickles appears to be actively concealing his location to evade service of process, it is impossible for me to determine whether email service would be inconsistent with an international agreement. And considering the totality of circumstances in this case, particularly the internet-based nature of the claims, Nickles's use of his email address and on-line presence as a shield and a sword to evade service while still actively having an impact on this case, I find that email service on Nickles through his email address jesse@littlebizzy.com is the method reasonably calculated to apprise Nickles of the pendency of the action and afford him an opportunity to present his objections. Accordingly, I exercise my discretion to permit Neumont to serve Nickles with a copy of the summons and complaint via his email address, jesse@littlebizzy.com. Neumont has 10 days to effectuate service by this substituted method and file proof of this service.

### Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Service by Publication **[Doc. 66] is GRANTED** in part and denied as part as set forth above. Neumont has 10 days to serve a copy of the summons and complaint on Jesse Nickles, individually, by email at jesse@littlebizzy.com and file proof of this service.

DATED: February 9, 2015.

_____
Jennifer A. Dorsey
United States District Judge

---

[26] Docs. 66 at 3–4; 67 at 2-5; 68 at 4.